**Scharf-Norton Center for**
**Constitutional Litigation at the**
**GOLDWATER INSTITUTE**
*Matthew R. Miller
*Jonathan Riches
500 E. Coronado Rd.
Phoenix, Arizona 85004
(602) 462-5000
litigation@goldwaterinstitute.org

**BARNETT LAW FIRM**
Colin L. Hunter
Jordy L. Stern
1905 Wyoming Boulevard Northeast
Albuquerque, New Mexico  87112
(505) 275-3200
colin@theblf.com
jordy@theblf.com

*Attorneys for Plaintiff*

*Motion for pro hac vice pending

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

RIO GRANDE FOUNDATION,

        Plaintiff,

    vs.

CITY OF SANTA FE, NEW MEXICO; and
CITY OF SANTA FE ETHICS AND
CAMPAIGN REVIEW BOARD,

        Defendants,

No.

**COMPLAINT FOR DECLARATORY**
**AND INJUNCTIVE RELIEF**

## INTRODUCTION

1.     This civil-rights lawsuit challenges a City of Santa Fe law that requires non-profit groups communicating about municipal ballot propositions to disclose the names of their donors to the government.  Plaintiff Rio Grande Foundation (the "Foundation") is a non-profit organization which is exempt from taxation under 26 U.S.C. § 501(c)(3).  Like many non-profits, the Foundation is engaged in numerous campaigns to inform the public about issues that the Foundation and its donors deem important.  As part of these efforts, the Foundation frequently

1

communicates to members of the public about state statutes and municipal ordinances in New Mexico—including ordinances being considered by the City of Santa Fe (the "City").

2.      Under a law adopted by the City in 2015, any time a non-profit group spends more than $250 to communicate with the public about a municipal ballot initiative, that group must disclose the identities of its donors, including their addresses and employers, to the government.  Failure to file the necessary disclosures with the City can result in fines of $500 per day.  *See*, Santa Fe City Campaign Code § 9-2.6.

3.      This new ordinance chills constitutionally protected speech by non-profit groups and their donors.  This lawsuit, which asks for only prospective relief, seeks to declare the City's donor-disclosure requirements unconstitutional under the First Amendment to the U.S. Constitution, as incorporated against the States by the Fourteenth Amendment; and Article II, §17 of the New Mexico Constitution.  Such declaration will ensure that the Foundation and other non-profit groups may speak freely and openly about issues that matter to them, free from the fear that, by doing so, they will be forced to violate the privacy of their donors and potentially subject those donors to harassment and retaliation.

## JURISDICTION

4.      Plaintiff brings this prospective civil-rights lawsuit pursuant to the First and Fourteenth Amendments to the United States Constitution; Article II, §17 of the New Mexico Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.  Plaintiff seeks injunctive and declaratory relief against Santa Fe City Code Section 9-2.6's donor-disclosure requirements for non-profits speaking about municipal ballot propositions, and any associated rules or practices of the City of Santa Fe and the City of Santa Fe Ethics and Campaign Review Board.

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

## VENUE

6.      Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(1)–(2).

## PARTIES

7.      Plaintiff Rio Grande Foundation is a non-profit New Mexico corporation that is tax-exempt under 26 U.S.C. § 501(c)(3).

8.      Defendant City of Santa Fe is a municipality and political subdivision of the State of New Mexico.

9.      Defendant City of Santa Fe Ethics & Campaign Review Board (the "Board") is a department of Defendant City of Santa Fe.

10.     Plaintiff seeks only prospective declaratory and injunctive relief against Defendants.

## STATEMENT OF FACTS

### The Rio Grande Foundation and Its Speech About a Proposed Soda Tax

11.     The Rio Grande Foundation is a non-profit organization based in Albuquerque, New Mexico.  Like thousands of charities, churches, hospitals, and other groups nationwide, it qualifies as a tax-exempt organization under section 501(c)(3) of the Federal Tax Code.

12.     The Foundation is funded entirely by donations from private individuals, couples, families, and grants from other organizations.  On the basis of the Foundation's 501(c)(3) status, these donations are tax-exempt for the giver.

13.     Many of the Foundation's donors prefer to keep their donations private.  Their reasons for preferring to remain private range from simple modesty to fear of harassment by groups and individuals who oppose the Foundation's mission and activities.

14.     The primary purpose of the Foundation is to engage in research and communication about public issues.  These issues range from the economy, to healthcare, to tax

policy.  The Foundation engages with these and other issues on both the state and municipal levels.

15.     For example, in May 2017, voters in Santa Fe were asked to consider whether the City should adopt a "soda tax"—an additional $0.02 per-ounce tax on sugary beverages.  The tax would apply not only to actual soda, but to any beverage that is sweetened by sugar, including sports drinks, iced tea, juice boxes, and even sweetened coffee drinks.  The tax would be adopted via Santa Fe Municipal Ordinance 2017-4, the "Sugar-Sweetened Beverage Tax Ordinance."

16.     The Foundation believed the proposed soda tax was a bad idea, and therefore decided to communicate with Santa Fe voters about the issue.

17.     Unlike most municipal ordinances, a soda tax cannot be adopted by a city through its city council.  It must instead be adopted by a city's voters using a ballot-initiative process.  Thus, Santa Fe voters would decide whether the City should adopt the Sugar-Sweetened Beverage Tax Ordinance during a municipal election on May 2, 2017.

18.     On April 6, 2017, the Foundation issued a press release announcing "Rio Grande Foundation Launches 'No Way Santa Fe' Initiative to Raise Awareness of Damaging Beverage Taxes."

19.     In the month leading up to the election, the Rio Grande Foundation regularly provided information about the soda tax to Santa Fe voters.  It did this primarily using Facebook and other forms of social media.  The Foundation directed people to a website, www.NoWaySantaFe.com, and an associated YouTube video that explained the tax to voters.  The Foundation, the website, and the video all sought to educate voters about the negative aspects of the proposed soda tax.

20.     The Foundation did not pay any money for the website or video.

4

### The City's Enforcement Actions Over the Foundation's Communications

21.     The Foundation's news release, Facebook posts, and other communications about the soda tax quickly drew the City's attention.

22.     On April 6, 2017—the same day the Foundation announced its anti-soda tax initiative—Santa Fe Assistant City Attorney Zachary Shandler sent a letter to Foundation President Paul Gessing.  In the letter, the City noted that "[b]ased on information in your press release [about the soda tax], it appears your organization has spent more than $250, on broadcast advertisements referring to a ballot proposition, which have reached more than 100 eligible voters.  If so, your organization must file a campaign statement. …  If you disagree, please contact the City Clerk's office immediately *in writing* to explain why you believe your organization is exempt from Section 9-2.6."  (Emphasis in original.)

23.     Prior to being contacted by the City Attorney, the Foundation spent approximately $1,500 to print postcards about the soda tax. These postcards were to be sent to Santa Fe voters. After being contacted by the City and informed about the donor-disclosure requirements if it spent more than $250 to communicate with voters, the Foundation refrained from sending these postcards. They remain unused and are now worthless.

24.     A citizen complaint was filed one day later, on April 7, 2017, by Santa Fe resident Edward T. Stein, with the Ethics and Campaign Review Board.  The complaint alleged that the Foundation violated the "Election and Political Campaign Codes.  Specifically, with regard to Ch. 9-2 and 9-3 of City Code."  The alleged violations occurred from "4/3/17 to the present [and] all times therein."

25.     That same day, on April 7, 2017, Foundation President Paul Gessing responded by letter to the City Attorney, informing the City that an initial review indicated that the Foundation had not spent more than $250 to communicate about the soda tax, and was therefore not required to disclose its donors to the city.

26.     On April 10, 2017, the Santa Fe City Clerk formally notified the Foundation about Mr. Stein's April 7 complaint.  The letter informed the Foundation that "you have ten (10) business days to file a sworn written response; however, the [Ethics and Campaign Review] Board has a previously scheduled meeting at 3:30 p.m. on April 19, 2017 and you have the option of submitting your response on or before this date for submittal at the meeting."

27.     Notwithstanding the City's invitation to submit the Foundation's response early, the formal response was actually not due until April 24, 2017.

28.     On April 13, 2017, Edward Stein filed an "Amendment to Complaint Form." This amendment to Mr. Stein's April 7 complaint alleged that the Rio Grande Foundation continued to violate the relevant ordinances, and went on to specifically list the "No Way Santa Fe" website and video.  "The charged party or parties have continued to violate Santa Fe's election code by trying to influence the soda tax election without filing the proper papers."

29.     On April 14, 2017, Foundation President Paul Gessing submitted another letter to the City, stating that "[W]e were planning to engage in public communications that would have triggered your reporting requirements and would have done so but for the ordinance.  Requiring 501c3 nonprofits to disclose their donors is a major burden and, accordingly, we are choosing not to speak rather than expose the privacy of our donors, including exposing them to potential harassment."

30.     On April 20, 2017, the Foundation received yet another communication from the City.  In this letter, Assistant City Attorney Zachary Shandler notified the Foundation that—notwithstanding the fact that the Foundation had refrained from engaging in further communications about the soda tax—the Board would hold a formal hearing regarding the Foundation's alleged violations of the City's campaign-finance ordinance on April 24, 2017.

31.     The City of Santa Fe Ethics & Campaign Review Board is the City's department that is charged with enforcing the City Campaign Code.

32.     Mr. Shandler's April 20 letter informed the Foundation that Mr. Stein "presented

Complaint #2017-4/4A to the City's Ethics and Campaign Review Board" on April 19, 2017.  At

that meeting, Mr. Stein "presented an affidavit from Mr. Glenn Silber regarding the potential

cost of the video found on the webpage 'No Way, Santa Fe.'"  The Board "viewed the video"

and concluded that Mr. Stein's complaint "set forth 'legally sufficient facts which, if true, show

probable [cause] to believe that there was a violation' of the City Campaign Code."

33.     The letter went on to inform the Foundation that the April 24 hearing would

"include opening statements, witnesses, and submittal of written documents. … At the

conclusion of this hearing, the Board may vote on the matter and may dismiss the complaint or

announce monetary sanctions."

### Santa Fe's Donor-Disclosure Ordinance

34.     At the April 24, 2017, hearing, the Board would consider the Foundation's

alleged failure to comply with the City's recently adopted donor-disclosure ordinance.

35.     Santa Fe City Campaign Code Section 9-2.6 ("Independently Sponsored

Campaign Communications and Reporting"), adopted in 2015, is triggered when a non-profit

organization:

- spends, in aggregate, more than $250 in a single election;

- to pay for any form of public communication (print, broadcast, electronic
advertising, billboards, pamphlets, signs, mailers, etc.);

- to expressly advocate for … the approval or defeat of a ballot proposition;

- by communicating with 100 or more voters;

- within 60 days before an election.

36.     Once someone triggers the ordinance, that individual or organization must file "a

report of all such expenditures made and all contributions received for the purpose of paying for

such expenditures." Santa Fe, N.M., City Campaign Code § 9-2.6(A).

7

37.     The required report must include the date, amount, and method of payment of each contribution.  It must also include the name, address, and occupation of the person making the contribution. *Id.*

38.     The amount of money the organization spends on its speech must also be explained in detail.  The report must include the date, the amount of the expenditure, the name and address of the person or entity where an expenditure was made, and the purpose of the expenditure. *Id.*

39.     The ordinance also applies to groups that oppose or support individual candidates for political office.  *Id.*  However, since 501(c)(3) non-profits are prohibited from supporting or opposing specific candidates, and since the Foundation accordingly does not engage in these kinds of communications, the Foundation does not challenge the ordinance as it applies to speech about candidates for office.

40.     Media organizations—even non-profit ones—are exempted from the reporting requirements of the ordinance.  *Id.*.

41.     A non-profit that refuses or fails to disclose its donors is subject to penalties of up to $500 per day.  Santa Fe, N.M., City Code § 6-16.7(B)(2).

42.     Similar laws have been adopted in cities and states around the country.

43.     The City and Mr. Stein alleged that the Foundation had spent more than $250 to communicate with voters about the soda tax.  Specifically, they alleged that the www.NoWaySantaFe.com website and associated video cost more than $250 to produce, thus triggering the donor-disclosure requirements.

## The Hearing and Its Aftermath

44.     The Foundation's formal hearing before the Board was held on April 24, 2017.

45.     Foundation President Paul Gessing attended the hearing on behalf of the Foundation, together with Albuquerque attorney Colin Hunter.

8

46.     The hearing was held in the Santa Fe City Council Chamber.

47.     Mr. Stein presented first.  His presentation focused on the NoWaySantaFe.com website and video.  Mr. Stein presented Mr. Silber, the local videographer, as a witness.  Mr. Silber testified that the video was estimated to have cost at least $3,000 to produce.  Mr. Stein argued that this exceeded the $250 reporting threshold, and that the Foundation was therefore required to disclose its donors.

48.     Even though the Foundation had not spent any money on the video or website, Mr. Stein argued that it was an in-kind donation that nevertheless triggered the City's donor-disclosure requirements.

49.     After a brief presentation by Mr. Hunter on behalf of the Foundation, Mr. Gessing was called to testify.  Mr. Stein asked Mr. Gessing about the provenance of the website and video.  Mr. Gessing testified that the Foundation had produced neither the video nor the website, but simply directed people to these resources.

50.     The hearing lasted for approximately one hour.  At the hearing's conclusion, the Board went into executive session for approximately 15 minutes.

51.     After the executive session, the Board issued a unanimous public reprimand of the Foundation for failing to comply with the donor-disclosure requirements because the Board deemed the website and video to be in-kind contributions to the Foundation, and those communications were deemed to have cost approximately $3,000 to produce.

52.     According to the City, in-kind contributions count toward the $250 reporting threshold.

53.     After the hearing, the Foundation filed the paperwork that the City demanded it file in order to comply with the donor-disclosure law.  This paperwork included disclosure of the separate 501(c)(3) non-profit organization that produced the video and website, as well as the

identity of individual donors who funded the Facebook advertising purchased by the Foundation to educate voters about the soda tax.

### The Foundation Intends to Continue Speaking About Santa Fe Ballot Propositions

54.     This lawsuit seeks only prospective relief and does not challenge the City's prosecution of the Foundation over its speech about the soda tax, nor seek any relief related to that prosecution.

55.     However, as it has done throughout its history, the Foundation intends to continue to speak about municipal ballot propositions that reach its mission, including those that will inevitably arise in the City of Santa Fe.  This lawsuit seeks protection for speech in which the Foundation will engage in the future.

56.     When the Foundation wishes to engage in speech and debate about Santa Fe ballot propositions in the future, it does not want to choose between remaining silent or disclosing the names and personal information of its donors to the government.

### Injury to Plaintiff

57.     Plaintiff Rio Grande Foundation intends to speak about, oppose, and support municipal ballot issues in the City of Santa Fe in the future.

58.     To engage in debates about future ballot issues fully and effectively, the Foundation must be able to communicate information and opinions to voters in Santa Fe.

59.     To effectively communicate its message on a given issue, the Foundation must spend more than $250 on mailers, websites, videos, targeted advertising, and other forms of speech.

60.     Santa Fe's donor-disclosure requirements for 501(c)(3) organizations substantially burden and chill the Foundation's rights to free speech and association under the First and Fourteenth Amendments to the United States Constitution and Article II, § 17 of the New Mexico Constitution.

10

61.     Santa Fe forces non-profit groups to choose between protecting the privacy of their donors and meaningfully participating in topics of debate that are important to those same donors.

62.     Most charitable donors do not wish to have their identities disclosed to the government.  They do not wish to have their names, addresses, donation amounts, and occupations made part of a publicly accessible record.  The reasons for this range from simple modesty to fear of intimidation and retaliation.

63.     Donors are less likely to donate money to charities if they know their identities, occupations, and donation amounts will be disclosed to the government and made publicly available.

64.     Once an organization contemplates spending more than $250 to communicate with voters about a ballot initiative, that non-profit must choose which harm it will suffer: a chilling of its speech, or a loss of privacy for its donors.  No matter which path they choose, Santa Fe forces organizations like the Foundation to endure a significant harm in exchange for exercising their First Amendment rights.

65.     The Foundation would like to continue engaging in public debates about Santa Fe ballot propositions.  But as long as Santa Fe's donor-disclosure requirements remain in place, the Foundation will be chilled from doing so.

## CONSTITUTIONAL VIOLATIONS

### First Claim for Relief
#### (First Amendment)

66.     Plaintiff realleges and incorporates by reference all of the allegations set forth in ¶¶ 1 through 65 above.

67.     The First Amendment to the U.S. Constitution provides that "Congress shall make no law … abridging the freedom of speech … or the right of the people peaceably to assemble." The First Amendment is made applicable to the states by the Fourteenth Amendment.

68.     The First Amendment prohibits the government from requiring charitable groups to disclose the identities of their donors because the government's interest in such disclosure, in the context of ballot initiatives, is *de minimus*, while the corresponding harm of such disclosure to the speech and associational rights of non-profits and their donors is great.

69.     Santa Fe City Campaign Code Section 9-2.6 requires any non-profit organization that spends more than $250 to communicate about a municipal ballot initiative, within 60 days of an election, to file "a report of all such expenditures made and all contributions received for the purpose of paying for such expenditures."

70.     This report must include the date and time of each contribution, plus the name, address, and occupation of the person making the contribution.

71.     Most charitable donors do not wish to have this information disclosed to the government, nor have it incorporated into a publicly available document.

72.     The report must also include detailed reports of expenditures the organization made in order to speak.

73.     These reporting requirements visit severe burdens on non-profits that wish to communicate about the issues of the day, in the form of reporting fees, potential $500 per-day fines, and the exposure of private information about their donors and supporters.

74.     Under Defendants' donor-disclosure requirements, every non-profit group that spends more than $250 to communicate with voters about a ballot proposition in the City necessarily exposes the private information of its donors to public review and scrutiny.

75.     As a direct and proximate result of Santa Fe City Campaign Code Section 9-2.6, the Foundation and others similarly situated have suffered and will suffer irreparable harm to their First Amendment rights to free speech and association every time they wish to speak about a municipal ballot proposition, in violation of 42 U.S.C. § 1983.  The Foundation has no adequate legal, administrative, or other remedy by which to prevent or minimize this harm.

12

Unless Defendants are enjoined from implementing and administering Santa Fe City Campaign Code Section 9-2.6, as it relates to ballot propositions, Plaintiff Foundation and others similarly situated, will continue to suffer great and irreparable harm.

**Second Claim for Relief**
**(New Mexico Free Speech Clause)**

76.     Plaintiff realleges and incorporates by reference all of the allegations set forth in ¶¶ 1 through 75 above.

77.     Article II, §17 of the New Mexico Constitution provides that "[e]very person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

78.     As a direct and proximate result of Santa Fe City Campaign Code Section 9-2.6, the Foundation and others similarly situated have suffered and will suffer irreparable harm to their rights under Article II, §17 of the New Mexico Constitution.  The Foundation has no adequate legal, administrative, or other remedy by which to prevent or minimize this harm. Unless Defendants are enjoined from implementing and administering Santa Fe City Campaign Code Section 9-2.6, as it relates to ballot measures, Plaintiff Foundation and others similarly situated will continue to suffer great and irreparable harm.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests relief as follows:

1.     For entry of judgment declaring that Section 9-2.6 of the Santa Fe City Code is unconstitutional, facially and as-applied, as it relates to speech about the approval or defeat of a ballot proposition;

2.     For entry of a permanent injunction against Defendants prohibiting them from administering Santa Fe City Campaign Code Section 9-2.6 as it relates to speech about municipal ballot propositions;

13

3.     For an award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988(b); and,

4.     For such further legal and equitable relief as the Court may deem just and proper.


**RESPECTFULLY SUBMITTED** this 26th day of July, 2017 by:


/s/   *Colin L. Hunter*
\*Matthew R. Miller
\*Jonathan Riches
**Scharf-Norton Center for Constitutional Litigation**
**at the GOLDWATER INSTITUTE**

Colin L. Hunter
Jordy L. Stern
**BARNETT LAW FIRM**

*Attorneys for Plaintiff*

\*Motion for admission *pro hac vice* pending.